UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
LaTOYA ROBINSON, Individually and as Mother and
Natural Guardian of Livon Correa (age 14), Leonardo A.
Correa (age 13) and Levi A. Correa (age 10); and JaQUETA
CARTER, as Mother and Natural Guardian of NaySean Chavis
(age 15), NayQuan Chavis (age 12) and Anthony Carter (age 7),

                              Plaintiffs                      25 CV 8047

             -against-

                                           COMPLAINT

THE CITY OF NEW YORK, NYPD LIEUTENANT
RANDOLPH PENA-MEDINA (47th Precinct), NYPD        JURY TRIAL
OFFICER JEAN K. GILOT (Shield 12090, 47th Precinct),    DEMANDED
NYPD OFFICER JOHN DOE No. 1 (47th Precinct), and
NYPD SUPERVISORS, DETECTIVES, and OFFICERS
JOHN and JANE DOES 2-10,
                                Defendants.
------------------------------------------------------------------------X

       Plaintiffs, by their attorney, Joel Berger, Esq., for their complaint allege, upon information and belief, as follows:

### NATURE OF ACTION

       1       This is an action to recover money damages arising out of the violation of plaintiffs' rights under the Constitution and laws of the United States and the State of New York, by employees of the New York City Police Department (NYPD) on July 19, 2024, including 1) an illegal break-in and raid upon a private residence **_without a warrant_**, wielding guns and tasers and threatening use of force, solely to make an arrest – in violation of *Payton v. New York*, 445 U.S. 573 (1980); and (2) false arrest of 15-year old boy NaySean Chavis -- the target of the raid -- who was released without any charges after approximately 5 hours in custody. The warrantless raid was captured on video and audio, with the police boasting that they did not need a warrant because a crime allegedly had been committed and that their forced entry was no different than rushing into a building on fire. Present in

the dwelling and confronted by the police were plaintiff Robinson -- tenant of the dwelling, who was handcuffed during the raid – and her three sons ages 14, 13 and 10, and her three nephews ages 15, 13 and 7. The 15-year-old nephew, NaySean Chavis, is the boy who was falsely arrested.

## *JURISDICTION AND VENUE*

2. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth, and Fourteenth Amendments to the Constitution of the United States.

3. The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331 and 1343.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391 (b).

5. This action is also brough pursuant to the Court's diversity jurisdiction, 28 U.S.C. § 1332 (a) (1), in that Plaintiff JaQueta Carter and her three sons – NaySean Chavis, NayQuan Chavis and Anthony Carter -- are all citizens of the Commonwealth of Pennsylvania, and all defendants are citizens of the State of New York, and the amount in controversy exceeds $75,000.

## *PENDENT JURISDICTION*

6. This Court also has jurisdiction over plaintiffs' state law claims, pursuant to its pendent or supplemental jurisdiction as codified in 28 U.S.C. § 1367.

7. On October 7, 2024, within ninety days after the claims alleged in this complaint arose, a Notice of Claims was duly served upon the Comptroller of the City pursuant to § 50-e of the General Municipal Law.

8. The Comptroller's office assigned claim numbers 2014PI032783 (LaToya Robinson individually), 2024PI032781 (Livon Correa), 2014PI032782 (Leonardo A. Correa), 2024PI032779 (Levi Correa), 2024PI032784 (NaySean Chavis), 2024PI032785 (NayQuan Chavis

and 2024PI032787 (Anthony Carter).

9. Hearings of all claimants were conducted pursuant to § 50-H of the General Municipal Law on January 6, 17 and 22 and February 14, 2025.

10. Transcripts of the 50-H hearings were received in February 2025 by the firm that conducted the 50-H hearings, yet all but one were not delivered to claimants' attorney until April 29 and April 30, 2025, and one additional outstanding transcript was not received until June 4, 2025.

11. On June 25, 2025, a Settlement Demand was sent to the Comptroller's office, accompanied by video/audio and numerous documents about the incident and records reflecting mental health treatment of Ms. Robinson and some of the minors -- including the records of involuntary hospitalization of NaySean Chavis as a result of a suicide note. Additional mental health treatment records were submitted shortly thereafter.

12. On July 17, 2025, the Comptroller's office scheduled a conference on all claims, to be conducted on September 5, 2025.

13. On August 22, 2025, at 3:16 P.M., the Comptroller's office employee responsible for scheduling settlement conferences requested an adjournment of the conference to September 12, 2025, but then abruptly, less than three hours later that same day at 6:09 P.M., she canceled the settlement conference and announced that the office would no longer consider pre-litigation settlement discussion. On September 2, 2025, a higher-level supervisor of the Comptroller's office revered course again and declared that the office would schedule a settlement conference -- but to date, more than 3 weeks since September 2, there has been no further word from the Comptroller's office and it has not rescheduled a settlement conference as promised on September 2.

14.     Far more than thirty days have elapsed since the service of the Notice of Claims, and adjustment or payment of the claims has been neglected or refused by defendant City of New York.

15.     Plaintiffs, having made every effort for many months to settle this matter without litigation, are commencing this action within one year and ninety days of the July 19, 2024, date on which the events of this action occurred, as required by General Municipal Law § 50-i (1) (c).

### *JURY DEMAND*

16.     Plaintiffs demand trial by jury in this action.

### *PARTIES*

17.     Plaintiffs are Black Americans and citizens of the United States. Plaintiff Robinson and her three sons are residents of the State of New York and City of New York (Bronx County). Plaintiff Carter and her three sons are residents of Allentown, Pennsylvania.

18.     Defendant City of New York operates the NYPD, a department or agency of defendant City of New York responsible for the appointment, training, supervision, promotion and discipline of police officers, detectives and supervisory police officers.

19.     At all times relevant herein, defendants Lieutenant Pena-Medina, Police Officer Gilot and Police Officer John Doe No. 1, were NYPD police officers who broke into and raided Ms. Robinsons dwelling without a warrant and arrested 15-year-old NaySean Chavis. They were all assigned to the 47th Precinct, 4111 Laconia Avenue Avenue, Bronx, New York, 10466.

20.     At all times relevant herein, defendants John and Jane Does 2-10 were NYPD supervisors, detectives or other officers who authorized, acquiesced in, or failed prevent or to report accurately the incident of this lawsuit.

21.     At all times relevant herein, defendants Pena-Medina, Gilot, John Doe No. 1, and

4

John and Jane Does 2-10 were acting as agents, servants and employees of defendant City of New York and the NYPD.

22.     At all times relevant herein, all defendants were all acting under color of state law.

## FACTS

### A.     THE INCIDENT

23.     On Friday, July 19, 2024, at approximately 8:20 P.M., at plaintiff Robinson's home, 837 Chestnut Street, Bronx, NY 10467, three NYPD officers of the 47th Precinct -- Lieutenant Pena-Medina, PO Gilot and PO John Doe No. 1, broke through the locked front door and secondary door of the dwelling and raided it.

24.     PO John Doe No. 1 had his firearm drawn and pointed at Ms. Robinson. PO Gilot was wielding a taser.

25.     ***The officers did not have a warrant and admitted that they did not have a warrant***.

26.     Defendant Lieutenant Pena-Medina admitted on video/audio that the police had broken into the dwelling without Ms. Robinson's permission, at first claiming that he was just investigating property damage as if there had been a fire.

27.     However, the police also told Ms. Robinson that they were looking for her 15-year-old nephew, NaySean Chavis, and on video/audio defendant Lt. Pena-Medina explicitly threatened that force would be used if NaySean did not come downstairs from the 2-story dwelling. Video IMG 2501, July 19, 2024, 8:22 P.M., at 0:37.

28. When Ms. Robinson protested that there obviously was no fire and that the forced warrantless entry was illegal the Lieutenant responded on the video/audio "no it's not" and explicitly stated "this is a crime, Ma'am, worse." Video IMG 2501, July 19, 2024, at 0:46 –1:10.

29. Later on video IMG 2501, at 5:43, 5:58 and 6:19, defendant PO Gilot repeats this statement -- three times -- attempting to justify the warrantless break-in by stating: "It's about a crime."

30. The police handcuffed the protesting Ms. Robinson and she remained handcuffed for approximately 30 minutes.

31. Ms. Robinson's three sons and three nephews were all upstairs in the 2-story dwelling at the time.

32. The police demanded that 15-year-old NaySean Chavis come downstairs, alleging that he had been involved in an altercation across the street from the house near a bodega and that he was allegedly in possession of a knife.

33. The police admitted that the individual with whom the altercation had occurred, an adult named Enrique Foote (who had twice been convicted for felonious assaults and had served time in New York State prisons for both felonies) had already been arrested and was in custody at the 47th Precinct -- an admission establishing that Foote was not in any exigent danger. But they insisted that they had to arrest NaySean as well.

34. The above statements, as well as footage depicting the damage to Ms. Robinson's doors, are all captured on the video/audio.

35. Foote was a complete stranger to Ms. Robinson and the six boys.

6

36. At no time had Foote ever been inside of dwelling – not before, during, or after the incident of this lawsuit.

37. Eventually -- after the police had begun breaking through yet a third locked door, a door leading to the upstairs level of the home -- Ms. Robinson asked all of her sons and nephews to come downstairs.

38. PO John Doe No. 1 kept his firearm drawn and his PO Gilot kept wielding his taser as the six boys came downstairs. Lt. Pena-Medina several times ordered the two officers to put away the firearm and taser, but they ignored their supervisor's directive.

39. The police then handcuffed and arrested 15-year-old NaySean Chavis.

40. They did not even allow NaySean to put on shoes, and took him in his socks to the 47th Precinct.

41. Ms. Robinson had asked if NaySean could put on his sneakers first, and was told only that she could bring the sneakers to the precinct. But on her arrival there she was not permitted to provide the sneakers and was not even allowed to enter the precinct to see NaySean.

42. Ms. Robinson and the six boys were terrified at this warrantless raid on the sanctity and privacy of Ms. Robinson's home.

43. Ms. Robinson and the six boys were all confined to the premises during the raid.

**B.  *EVENTS PRECEDING THE WARRANTLESS BREAK-IN***

44. Ms. Robinson had called 911 approximately an hour before the break-in because she had heard some of her sons and nephews screaming from across the street outside her home, near a convenience store.

45. Ms. Robinson went into the street to investigate and learned that an adult male had assaulted her 15-year-old nephew NaySean Chavis and had smashed the phone of her 10-year-old son Levi Correa

46. Ms. Robinson observed that NaySean had big red spots on the back of his neck, and she made a 911 call from the street.

47. Ms. Robinson's three sons, Livon, Leonardo and Levi Correa, and her two youngest nephews, NayQuan Chavis and Anthony Carter, were scared and all ran into the house.

48. Ms. Robinson and NaySean remained on the street and spoke with the officers who responded to the 911 call, and then went into Ms. Robinson's home.

49. The police allowed them to depart the scene and did not arrest NaySean at that time.

50. It was approximately an hour later that three other officers, defendants Lt. Pena-Medina, PO Gilot and PO John Doe No. 1, broke into Ms. Robinson's home without a warrant, alleging that the 15-year-old NaySean had been seen on the street with a knife.

51. The officers did not find any knife on NaySean's person or elsewhere.

52. The officers nonetheless proceeded to arrest NaySean and take him in handcuffs, without shoes, to the 47th Precinct.

53. Footage of the assault on NaySean (also on the video described above), taken from a nearby store, does not depict NaySean with a knife or any other weapon.

54. At the 47th Precinct the police held NaySean in custody for more than 5 hours, handcuffed to a bench at the Precinct.

55. NaySean was not allowed to see his mother, Ms. Carter, or his aunt, Ms. Robinson, during

8

his more than 5 hours of confinement at the 47th Precinct.

56. Both Ms. Robinson and later Ms. Carter came to the Precinct but were not even allowed to enter.

57. The police subsequently determined during the period of NaySean's confinement at the Precinct that there had been no lawful basis for arresting NaySean.

58. The police rather determined that it was NaySean who had been assaulted and injured on the street by the other individual – Enrique Foote, a 25-year-old adult Caucasian male, whom the police had already arrested and jailed at the 47th Precinct before breaking into Ms. Robinson's home.

59. Foote had a criminal record of two prior felony assault convictions, in 2018 and 2022, each of which had resulted in his incarceration in NYS prisons.

60. It is undisputed that at no time before, during or after the incident was Enrique Foote ever inside Ms. Robinson's home.

61. Even if Foote had in fact been the victim of an assault on the street by NaySean -- which he was not -- he was not even arguably in any danger from within the dwelling, nor was anyone else even arguably in any danger from within the dwelling.

62. The police therefore lacked any exigent circumstances justifying the warrantless break-in and raid on Ms. Robinson's house.

63. Even assuming *arguendo* that Foote lied to the police and made false accusations against NaySean, and even making the highly dubious assumption *arguendo* that it was reasonable for the police to accept the word of this twice-convicted adult violent felon whom they had already

9

arrested, the only lawful procedure under *Payton v. New York*, 445 U.S. 573 (1980) would have been to attempt to obtain a warrant for NaySean's arrest -- not to conduct a warrantless break-in into Ms. Robinson's home and threaten to use force to arrest the 15-year-old NaySean Chavis.

### C. THE LAW

64. Warrantless entries into the home are " ' presumptively unreasonable,' " because " ' physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed,' "*United States v. Allen*, 813 F.3d 76, 81 (2d Cir. 2016), quoting *Payton v. New York*, 445 U.S. 573, 586 (1980). " ' To be arrested in the home involves not only the invasion attendant to all arrests but also an invasion of the sanctity of the home. This is simply too substantial an invasion to allow without a warrant, at least in the absence of exigent circumstances, even when ... probable cause is clearly present.' " *Allen* at 81, quoting *Payton* at 588-89. "[T]he Fourth Amendment applies with its greatest force in the home." *Allen* at 85.

65. It is also settled law that "[p]robable cause for a forced entry in response to exigent circumstances requires finding a probability that a person is in 'danger.' " *Kerman v. City of New York*, 261 F. 3d 229, 236 (2d Cir. 2001), quoting *Tierney v. Davidson*, 133 F. 3d 189, 196-97 (2d Cir. 1988). This strict rule applies because "[t]he home has properly been regarded as among the most highly protected zones of privacy, and the sanctity of private dwellings [is] ordinarily afforded the most stringent Fourth Amendment protection." *Kerman* at 236, quoting *Ayeni v. Mottola*, 35 F. 3d 680, 685 (2d Cir. 1994) (citations omitted).

66. Neither Enrique Foote nor anyone else was even arguably in "danger" when the police broke into Ms. Robinson's dwelling without a warrant in order to arrest NaySean Chavis.

67. Police efforts to circumvent the requirement of exigent circumstances by alternatively claiming the need for "hot pursuit" of a suspect have been uniformly rejected. Only four years after *Payton* the Supreme Court held that "hot pursuit" requires <u>both</u> "immediate or continuous pursuit…from the scene of a crime" <u>and</u> a "threat to public safety." *Welsh v. Wisconsin*, 466 U.S. 740, 753 (1984).

68. In this case there was no "immediate or continuous pursuit" -- NaySean (and Ms. Robinson) remained at the scene on the street to speak with officers who responded to Ms. Robinson's 911 call, and then calmly and without any police interference returned to Ms. Robinson's dwelling. It was approximately an hour later that the three defendant officers broke into the dwelling without a warrant, stating that they were seeking to arrest NaySean by force if necessary, and at that time there was no threat to the safety of Enrique Foote or anybody else.

69. The raid was a gross violation of the Fourth Amendment rights of Ms. Robinson, her three sons and her three nephews. The applicable Fourth Amendment principles had been settled, clearly-established law for more than four decades since the 1980 *Payton* decision and its successors. All police officers -- let alone a high-ranking supervisor such as a Lieutenant -- must comply with those principles. Yet the police shamelessly violated those principles and even boasted on video that they had the right to do so -- to forcibly enter a home without a warrant solely to make an arrest.

### D. THE AFTERMATH

70. Enrique Foote, whom the police admitted to Ms. Robinson had already been arrested prior to the police breaking into Ms. Robinson's house, was charged with Assault in the Third

11

Degree (PL § 120.00.01, a class A misdemeanor) and Harassment (PL §240.26.01, a Violation), for his criminal conduct toward the 15-year-old NaySean Chavis.

71. Fifteen-year-old NaySean was eventually released without any charges from the 47th Precinct at approximately 2 A.M. on July 20, 2024 -- but only after more than five hours of imprisonment at the Precinct.

72. During those 5+ hours of confinement NaySean was handcuffed to a bench inside the Precinct, was not allowed to see his aunt or his mother, and was not even allowed to put on shoes that his aunt and mother had brought with them when they sought to enter the Precinct to see NaySean but were denied entry.

73. NaySean was never even charged with any offense, photographed, or fingerprinted. It is unknown whether he was formally arrested followed by issuance of a voided arrest form, or simply released from the precinct without any formalities.

74. NaySean's mother, Plaintiff JaQueta Carter, frantically drove 2½ hours from her home in Allentown, Pennsylvania to the 47th Precinct in the Bronx, but upon her arrival she was kept outside of the Precinct and not allowed to see her son or even to provide his shoes.

75. Ms. Carter was told that NaySean was being held until some kind of paperwork was concluded.

76. Ms. Carter was still waiting on the street at approximately 2:00 A.M. on July 20, 2024, when NaySean was finally released without any charges whatsoever -- not even a Desk Appearance Ticket or summons.

77. At Enrique Foote's arraignment Foote was served with an Order of Protection requiring

him to stay away from NaySean and have no contact of any kind with NaySean.

78. No Order of Protection was entered against NaySean, who had been released from custody without charges of any kind and did not have to appear in court.

79. The disposition of the charges against Foote is unknown. They were still pending as of the date of the Notice of Claim. *People v. Enrique Foote*, Docket No. CR-018197-24BX (Criminal Court, Bronx County). Following his arraignment Foote had two court appearances (Aug. 23, 2024, and Sept. 26, 2024), both resulting in adjournments. He was scheduled to appear in court again on Oct. 24, 2024, but *Web Criminal* provides no record of any subsequent proceedings.

80. Despite Foote's criminal record, he may have been allowed some kind of plea bargain under which the record was sealed. *Web Criminal* did reflect the charges against him for assaulting NaySean, and records of the NYS Department of Correctional and Community Services do document Foote's two prior felony convictions and incarcerations in state prison for assaultive crimes.

81. The day after the illegal police break-in Ms. Robinson received a call from Detective Rodney Vandunk of the 47th Precinct Detective Squad, apologizing to Ms. Robinson for the break-in and raid on her home, and admitting that -- contrary to the allegations of the officers during the raid -- there was no video evidence depicting NaySean in possession of any knife.

82. Detective Vandunk also gave Ms. Robinson the number of a Report on the incident -- 2024-047-008281 -- but when Ms. Robinson contacted the Precinct she was advised that the report would not be released to her or her attorney.

83. Ms. Robinson initially called the NYC Civilian Complaint Review Board (CCRB) the day

13

after the incident but subsequently withdrew her CCRB complaint lest it delay or interfere with other proceedings, and the CCRB has marked the matter as "Closed." CCRB Case # 202407327.

## *DAMAGES*

84. The warrantless raid has left Ms. Robinson, her three sons and her three nephews shattered and frightened. They are fearful that if the police could do this sort of thing to them once, it could easily happen again. They have flashbacks and nightmares about the incident. They are scared that they have no defense against this kind of police intrusion into the sanctity of a dwelling.

85. The six boys were especially traumatized by experiencing such an encounter with the police at such an early age, an encounter that included being confronted by police officers with guns and tasers and threatened with the use of force.

86. Ms. Robinson and all of the boys except for 7-year-old Anthony Carter have been seen by mental health professionals and diagnosed with PTSD. Records reflecting their treatment are available and most have already been provided to the Comptroller's office.

87. Fifteen-year-old NaySean was especially traumatized by the police raid, by being handcuffed and arrested during the raid, and by being confined to the 47th precinct handcuffed to a bench for more than 5 hours without being allowed to see his mother or his aunt.

88. A few months after his arrest NaySean was involuntarily hospitalized at the Lehigh Valley Hospital in Pennsylvania for 36 hours because he wrote a note threatening suicide after being called to his school principal's office over a minor incident in which one of his friends was at fault.

89. NaySean's mother, Plaintiff JaQueta Carter, explicitly testified at her 50-H hearing that the suicide note resulted from NaySean's fear "of being arrested and going to jail again." Transcript of Jan. 17, 2025, p. 28, lines 10-13.

90. The complete Lehigh Valley Hospital record of NaySean's involuntary commitment as a result of the suicide episode is available and has already been provided to the Comptroller's office.

91. Plaintiffs are also entitled to punitive damages, since the police officers ignored clearly established constitutional principles that had been in place for more than four decades, defendant Lieutenant Pena-Medina claiming -- on the video/audio -- that the forced entry was no different than rushing into a building on fire, and then arguing that the raid was worse than a fire because a crime allegedly had been committed.

92. The 15-year-old NaySean Chavis is also entitled to punitive damages because his arrest was baseless, the police having released him after more than 5 hours in custody, handcuffed to a bench, without any charges at all -- without even being allowed to see his mother or his aunt, without even being allowed to put on shoes.

93. Defendant City of New York has a long-standing and well-documented policy of indemnifying officers it represents for all awards of punitive damages.

### FIRST CLAIM FOR RELIEF

94. Plaintiffs repeat and reallege the allegations contained in ¶¶ 1-93.

95. Defendants, by their conduct toward plaintiffs alleged herein, violated plaintiffs' rights guaranteed by 42 U.S.C. § 1983, the Fourth, and Fourteenth Amendments to the Constitution of the United States, Article I, §§ 1, 6, 11 and 12 of the Constitution of the State of

New York, and the laws of the State of New York and the City of New York.

### SECOND CLAIM FOR RELIEF

96. Plaintiffs repeat and reallege the allegations contained in ¶¶ 1-93 and 95.

97. The conduct toward plaintiffs alleged herein constituted an illegal forced break-in of a dwelling, false arrest, unnecessary and excessive use of force, and employee negligence.

98. The conduct toward plaintiffs alleged herein subjected them to trauma, shock, debasement, fright, fear, humiliation, embarrassment, loss of freedom, harassment, and physical, psychological and emotional injury, trauma, pain, and suffering.

### THIRD CLAIM FOR RELIEF

99. Plaintiffs repeat and realleges the allegations contained in ¶¶ 1-93, 95, and 97-98.

100. At all times relevant herein, the individual defendants were on duty and were acting within the scope of their employment as agents, servants and employees of the City of New York, which is therefore responsible for their conduct under common law, state law, city law and Article I, §§ 1, 6, 11 and 12 of the Constitution of the State of New York.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully requests judgment against defendants as follows:

(a)  Compensatory damages against all defendants, jointly and severally;

(b)  Punitive damages against all individual defendants, jointly and severally;

(c)  Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

(d)  Such other and further relief as this Court deems just and proper.

Dated:  New York, New York
        September 29, 2025

Respectfully submitted,

_____
**JOEL BERGER**
675 Third Avenue, 8th Fl.
New York, New York 10017
(212) 687-1425

**ATTORNEY FOR PLAINTIFFS**